UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| | ) | No. 5:15-CV-319-REW |
| Plaintiff, | ) ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) ) | ORDER |
| ROBERT LUTES and GLADYS CREECH, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers claimant Robert Lutes's motion for judgment on the pleadings. DE #18 (Motion). Since the filing of Lutes's motion, the suit's context has changed. Plaintiff Unum, the prior stakeholder, now stands dismissed. *See* DE #24 (Order). Prior to Unum's dismissal, both Unum and claimant Gladys Creech had responded. DE ##21 (Unum Response); 22 (Creech Response). Lutes replied. DE #27 (Reply). Taking account of the origin of the case as an interpleader action, and applying the standards for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court **DENIES** the motion (DE #18). The pleadings properly frame a plausible claim by Creech.

The case centers on the payment of life insurance proceeds under a policy decedent Patricia Lutes acquired via her employment. DE #1 (Complaint), ¶¶ 8, 10, 17. The employment-based policy, implicating ERISA, provided a jurisdictional basis for Unum's federal interpleader complaint. *Id.* ¶ 7. Essentially, Robert Lutes, as primary beneficiary, stands to receive the proceeds ($248,000) unless something disqualifies him. Gladys Creech is the contingent

1

beneficiary[1] and alternative to Lutes. The potential disqualification concerns the manner of death—Patricia Lutes died of a gunshot wound. There is no proof yet on the circumstances, just a death certificate reference to the manner of death as "under investigation" and a proffer that KSP continues to investigate.

Unum paid the full contested proceeds into the Clerk's registry, DE #16-1 (Letter re: check deposit), and now is out of the case, DE #24, leaving Robert Lutes and Gladys Creech to contest the merits. Lutes seeks to accelerate the disposition and wants a judgment on the pleadings. DE #18. The Court, which perceives a host of impactful legal issues on the horizon, **DENIES** the motion. The pleadings do, in context, plausibly state a claim for Gladys Creech, which is all Rule 12(c) requires. What ultimately happens will depend on the facts (as collected in discovery) and the resolution of multiple legal questions.

The applicable pleading and review standard is clear. The Sixth Circuit has stated:

> A party's Rule 12(c) motion is properly granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991)). We will accept as true "all well-pleaded material allegations" of the opposing party. However, we "need not accept as true legal conclusions or unwarranted factual inferences." *Winget,* 510 F.3d at 581–82 (quoting *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999)).

*Depositors Ins. Co. v. Estate of Ryan*, 637 F. App'x 864, 868 (6th Cir. 2016) (some citations omitted). Further:

> To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" [*Garcia v. Fed. Nat. Mortgage Ass'n*, 782 F.3d 736, 739 (6th Cir. 2015)] (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Thus, she would take, per the policy materials, "if all primary beneficiaries are disqualified or [predecease]" her. DE #1-1, at 6 (beneficiary designation form). Disqualification is at issue here.

alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)). We review a district court's grant of a Rule 12(c) motion for judgment on the pleadings under the same standard.

*Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 567 (6th Cir. 2015) (some citations omitted).

This case began with a complaint for interpleader, identifying the claimant status and basis as to both Robert Lutes and Gladys Creech. *See generally* DE #1. Creech alleges in her Answer that disqualification of Robert Lutes would entitle her to the proceeds: "Defendant Robert Lutes is a suspect in the death of his wife, Patricia Lutes, and if Defendant Robert Lutes is convicted for taking the life of Patricia Lutes, Gladys Creech, as contingent beneficiary, would be entitled to the proceeds[.]" DE #7 (Creech Answer), ¶ 8. Further, Creech sought payment of proceeds into court "until said time that a determination is made as to the involvement of Defendant Robert Lutes in the death of Patricia Lutes [and] is finally adjudicated." *Id.* ¶ A. Unum's pleading referenced the disqualification that would occur via the Kentucky slayer's statute, KRS 381.280, as well as under federal common law. *See* DE #1 (Complaint) ¶ 15. Interestingly, Robert Lutes pleaded willingness "to accept the allegations" of Unum as to that substantive paragraph. *See* DE #13 (Lutes Answer), ¶ 6.

Unum's foundational pleading, and the Answer of Creech, certainly state plausible claims. Creech's statement regarding the disqualifying effect of a conviction accurately depicts the toggling legal effect—if Lutes were convicted of murdering Patricia Lutes, he would not take the insurance proceeds under the Kentucky slayer's statute. Creech, building on Unum's allegations, also ultimately contends that a conviction is not a prerequisite to disqualification under the reasoning of Judge McKinley in *Reliance Standard Life Ins. Co. v. Stafford*, No. 4:06-CV-111-M, 2007 WL 1576719 (W.D. Ky. May 29, 2007). *See* DE #22, ¶ 8. Unum, as stated,

also injected federal common law disqualifying standards into the determination. *See* DE #21, at 2. These arguments frame the issues for resolution through the litigation process.

Lutes, who as of the briefing faced no charges in the death of Patricia Lutes, predictably seeks to hasten claim disposition. The Court does perceive a latent issue regarding the temporal application and limits of KRS 381.280. However, there are several other related questions the Court, with assistance of party briefing, must answer in the course of the litigation. These include (a) whether ERISA applies to preempt Kentucky law[2]; (b) if so, whether federal common law supplies an interstitial slayer's rule (and if so, the contours)[3]; (c) if not, whether Kentucky has a common law doctrine that could disqualify a beneficiary even absent a criminal conviction.[4]

---

[2] Courts often avoid resolving this because of perceived uniformity between state law and federal common law. *See, e.g., Bean v. Alcorta*, 2015 WL 4164787, at *7 (W.D. Tex. 2015) (following "lead of those courts that have declined to resolve the question [of preemption] because the outcome of this case remains the same whether the Court applies the Texas statute or federal common law"). The Court here is not so sure. *See, e.g., Ahmed v. Ahmed*, 817 N.E.2d 424, 431 (Ohio Ct. App. 2004) (discussing variety, indeed disuniformity, of slayer's rules across nation and concluding, "Accordingly, we must conclude that ERISA preempts Ohio's slayer statute in this case.").

[3] As one court described it:

> The federal common law rule regarding slayers derives from the common law principle that "[n]o person should be permitted to profit from his own wrong." *Prudential Ins. Co. v. Tull,* 690 F.2d 848, 849 (4th Cir. 1982) (citing *Shoemaker v. Shoemaker,* 263 F.2d 931, 932 (6th Cir. 1959); *United States v. Foster,* 238 F. Supp. 867, 868 (E.D. Mich. 1965); *United States v. Kwasniewski*, 91 F. Supp. 847, 851 (E.D. Mich. 1950); Restatement of Restitution §§ 187, 189 (1937)).

*Atwater v. Nortel Networks, Inc.*, 388 F. Supp. 2d 610, 615 (M.D.N.C. 2005). *Shoemaker*, a Sixth Circuit case under a prior statutory federal benefit scheme, disqualified a beneficiary on a civil finding of responsibility for that beneficiary's killing of an insured; this derived from "public policy founded upon the equitable principle that no person should be permitted to profit from his own wrong." *Shoemaker*, 263 F.2d at 932; *see also Standard Ins. Co. v. Coons*, 141 F.3d 1179, 1998 WL 115579, at *1 (9th Cir. 1998) (table) ("Federal common law refuses to let a slayer receive the life insurance proceeds of his victim.").

[4] Judge McKinley so held in *Reliance*. The Court notes, however, that the cases cited as indicative of a Kentucky common law rule all involved a prior *conviction* for a felonious killing. *See Reliance*, 2007 WL 1576719, at *1. Further, in *Wilson v. Bates*, 231 S.W.2d 39 (Ky. 1950),

4

As to this motion, the Court finds that the pleadings plausibly frame an issue of disqualification regarding Robert Lutes's entitlement to the life insurance proceeds. Future motion practice, after allowing for adequate discovery, can present and address the issues that will determine—as matters of fact, substantive law, and process—the right to the proceeds. Because the Unum interpleader allegations and Creech Answer set forth a plausible disqualifying scenario, the Court **DENIES** Lutes's motion for judgment on the pleadings.[5]

This the 21st day of July, 2016.



Signed By:
Robert E. Wier  REW
United States Magistrate Judge

---

the Kentucky high court arguably characterized the necessary state finding as assigned by the legislature to the criminal process: "Kansas has a statute similar to our statute. In [a Kansas case], it is said: 'Whether the person to whom the property would ordinarily go took the owner's life is a question that must be judicially determined by a court of competent jurisdiction. **The Legislature has seen fit to say that that fact must be ascertained in a criminal prosecution in which the person who would take the property is charged with killing the owner.** When that fact is ascertained, the property is not then taken from the person who would inherit, but it is then determined that the person never did inherit, and never did acquire any interest in the property.'" *Id.* at 41 (emphasis added). Without complete briefing, the Court is not yet prepared to stake the bounds of a Kentucky common law slayer's rule, at least, not one broader than what the statute itself embodies.

[5] The Court notes that the standards of Rule 8 require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Further, Rule 8(d)(2) allows alternative and hypothetical "statements of a claim." Creech adequately alleges the factual predicate for a plausible claim, in this context—that if Robert Lutes feloniously and intentionally killed Patricia Lutes, under the cited legal disqualification standards, then Creech instead would be entitled to the proceeds.